This is an appeal from a summary judgment entered against Dr. Emil Wright, Jr., and in favor of John A. Robinson III.
Defendant Robinson, along with Ben H. Walker and James M. Dunn, Jr., was a principal stockholder and officer of RoBen, Inc. They planned a mobile home development in Auburn, Alabama, and formed a limited partnership to finance the development of the trailer park. Several investors, including the plaintiff, Dr. Wright, were sold interests in a limited partnership known as Stonegate Development, of which RoBen, Inc. was the general partner.
Dr. Wright invested $45,000.00 in Phase I of the development and received ten percent of the shares in the limited partnership. In Phase II of the development, Dr. Wright invested $5,000.00 and a letter of credit for $67,500.00. Phase II was never developed as planned, and thereafter Dr. Wright filed suit in the United States District Court for the Middle District of Alabama against RoBen, Inc. and the principal stockholders, including Robinson.
While the federal suit was pending, the parties entered into a settlement agreement. The agreement, signed on June 8, 1978, provided, inter alia, that the federal lawsuit would be dismissed, without prejudice, and, in return, RoBen and its shareholders, individually, would purchase the limited partners' interests in Phase II of Stonegate Park Ltd. (including Dr. Wright's). Paragraph 9 of the agreement also provided:
 "Upon the sale of the interest of Emil Wright, Jr. in connection with Phase II of Stonegate of Auburn, but no later than November 27, 1979, parties of the second part agree to repay the said Emil Wright, Jr. the said $5,000.00 plus interest at 8% from this date, and further to cancel and return the said letter of credit for $67,500.00 described in paragraph (f) of the Whereas Clause, or upon failure of parties of the second part to pay the said $5,000.00 with interest and return said letter of credit parties of the second part agree for the Consent Judgment, attached hereto as Exhibit F, to be entered against them. . . ."
The consent judgment, Exhibit F, is set forth in pertinent part as follows:
 "PARTIES OF THE SECOND PART agree that in the event of default of the obligation as specified in paragraph 9 of the Settlement Agreement, entered into on the 8th day of June, 1978, to which this is marked as Exhibit F, they hereby irrevocably authorize Emil Wright, Jr., hereinafter referred to as PARTY OF THE FIRST PART or his legal heirs or legal representatives to designate any attorney at law to appear for PARTIES OF THE SECOND PART in any court in the State of Alabama, at any time after said default, as specified in said Settlement Agreement, and to confess a judgment as to the claims asserted in Count 4 of Civil Action No. 78-31-E now pending in the United States District Court for the Middle District of Alabama, without process or notice of any kind against PARTIES OF THE SECOND PART in favor of PARTY OF THE FIRST PART, or his legal heirs or legal representatives for the sum of $72,500.00 together with interest from date of default, costs and reasonable attorneys' fees on the above principal amount and waive and release all defenses available now or available at any later time, including but not limited to the following: Jurisdiction, lack of consideration, fraud, deceit, misrepresentation, mutuality of mistake, mistake, failure of meeting of the minds, duress, under influence, lack of capacity, unconscionability, against public police and illegality.
 "PARTIES OF THE SECOND PART further waive all errors which may intervene in any such proceedings, and consent to immediate execution upon said judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof. PARTIES OF THE SECOND *Page 96 
PART further acknowledge that this Consent Judgment is agreed to as a part of the Settlement Agreement and upon default, as specified in said Settlement Agreement and without further notice or process said Consent Judgment may be entered with waiver of all defenses and said Consent Judgment is agreed to as a part of said Settlement Agreement with legal advice of counsel of record; provided, however, PARTY OF THE FIRST PART agrees that there will be no execution on said Consent Judgment for any amount in excess of $5,000.00, plus interest, and no action shall be taken to collect said judgment in excess of $5,000.00 plus interest, unless and until PARTY OF THE FIRST PART is actually called on and pays the contingent liability under the said letter of credit described in paragraph 9 of the Settlement Agreement. In no event shall PARTY OF THE FIRST PART collect or attempt to collect by execution or otherwise any amount of said Consent Judgment in excess of $5,000.00, plus interest, and sums actually paid by PARTY OF THE FIRST PART under the above described letter of credit. Once the said letter of credit is cancelled and returned without any funds being paid thereunder by PARTY OF THE FIRST PART, then any portion of this Consent Judgment in excess of $5,000.00, plus interest, shall be released, satisfied and discharged."
Approximately two and one-half years after the settlement agreement was entered into, the RoBen shareholders notified Dr. Wright that the mortgage on the mobile home park was in arrears and that foreclosure was imminent. To prevent foreclosure, RoBen and its individual shareholders, including Robinson, agreed to relinquish their rights in the limited partnership (Phase I, Stonegate Park), if Dr. Wright and the other limited partners would bail them out of the financial crisis. Accordingly, on February 14, 1981, the parties entered into another agreement, whereby the limited partners (including Dr. Wright) would release RoBen and the general partners individually from all claims against them, in exchange for title to the land formerly held by RoBen, Inc. The release agreement expressly excepted the claim underlying Exhibit F, the consent judgment, as follows:
 "WAIVER, RELEASE AND RELINQUISHMENT OF ANY AND ALL CLAIMS
 "Emil Wright, Jr., has and does hereby waive, release and relinquish any and all claims which the undersigned now has through the date of execution of this instrument, against RoBen, Inc., [and the other defendants individually and as officers], except the claim of the undersigned against RoBen, Inc., [and the other defendants individually and as officers] as agreed and consented to in that certain Consent Judgment marked Exhibit F and attached to the Settlement Agreement dated June 8, 1978, by and between the undersigned and RoBen, Inc., [and the other defendants individually and as officers], as to the claims asserted in Count Four of Civil Action No. 78-31-E, United States District Court for the Middle District of Alabama, for the sum of $72,500.00 together with interest from date of default, costs and reasonable attorneys' fees on the above principal. Said claim for the sum of $72,500.00, together with interest from date of default, costs and reasonable attorneys' fees on the above principal, shall remain in full force and effect."
Dr. Wright was never repaid his $5,000.00 and the letter of credit was never returned and was ultimately called by the bank. Dr. Wright then instituted the instant suit in the Circuit Court of Madison County, Alabama, against RoBen, Inc., and the principals and officers individually. He alleged that the defendants had defaulted on paragraph 9 of the 1978 "Settlement Agreement" and asked the court to enter judgment in his favor as set forth in the consent judgment. The complaint was later amended to also include a breach of contract claim. Defendants Walker and *Page 97 
Dunn thereafter filed a suggestion of bankruptcy, leaving Robinson as the only viable defendant.
Robinson moved for summary judgment based upon the alleged illegality of the consent judgment. The trial court found that Exhibit F, the consent judgment, was in reality a confession of judgment and accordingly held:
 "That as a matter of law the plaintiff's claim for $67,500.00 is based solely upon an agreement to confess judgment contained in the agreement of the parties dated June 8, 1978, and that such agreement violates § 8-9-11, Alabama Code of 1975, and the public policy of this state; that the claim for $5,000.00 is a claim which has been released by the plaintiff in the release dated February 14, 1981. This court is further of the opinion that there exists no genuine issue as to any material fact. . . ."
Dr. Wright appeals from the trial court's grant of summary judgment, claiming:
I
 That the trial court erred in determining that the document entitled "Consent Judgment" was void as an agreement to confess judgment; and
II
 That even if the trial court correctly determined that that document was void as a confession of judgment, the underlying breach of contract claim presented a genuine issue of material fact which should have gone to the jury.
On appeal from a trial court's grant of summary judgment, this court must apply the same standard used by the trial court when ruling on the motion. Alabama Power Co. v. Blount BrothersCorp., 445 So.2d 250 (Ala. 1983). In Jehle-Slauson ConstructionCo. v. Hood-Rich, Architects and Consulting Engineers,435 So.2d 716 (Ala. 1983), we summarized the standard as follows:
 "Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Whatley v. Cardinal Pest Control, 388 So.2d 529
(Ala. 1980); Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala. 1978); Rule 56, ARCP. `If there is a scintilla of evidence supporting the position of the party against whom the motion for summary judgment is made, so that at trial he would be entitled to go to the jury, a summary judgment may not be granted.' Campbell v. Alabama Power Co., 378 So.2d 718, 721 (Ala. 1979); Chiniche v. Smith, 374 So.2d 872 (Ala. 1979). Once a motion for summary judgment has been made, the adverse party ordinarily should not rest on his pleadings, but should respond by setting forth specific facts which show that a material issue of fact does exist. Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala. 1980); Real Coal, Inc. v. Thompson Tractor Co., 379 So.2d 1249 (Ala. 1980)."
Id. at 718.
Initially, we agree with the trial court that Exhibit F, entitled "Consent Judgment," was, in reality, an agreement to confess judgment and was therefore void as a matter of law. Although the agreement of the parties was contractual in nature, it was never acknowledged or sanctioned by any court. Additionally, the agreement provided that it was not to be recorded in the county probate office or in any other state or federal public office. Moreover, the agreement called for Dr. Wright to designate any attorney at law to appear for defendants and to confess judgment against defendants without notice or service of process of any kind.
It is well settled that, in Alabama, agreements to confess judgment are void as against public policy. Section 8-9-11, Alabama Code (1975), sets forth the rule as follows:
 "All agreements, contracts or stipulations to confess judgment in any of the courts of this state, to be sued in any county other than that fixed by the venue statutes of this state or to authorize *Page 98 
another to confess judgment in any of the courts of this state made before the commencement of the action in which such judgments are so confessed shall be void, and all judgments by such unlawful confession, or otherwise taken or had in violation of this section, shall be set aside and annulled on motion if made within six months after the entry of such judgment."
In Fugazzoto v. Brookwood One, 295 Ala. 169, 325 So.2d 161
(1976), this court noted:
 "Both the Alabama courts and the Alabama legislature have consistently reaffirmed the public policy against contracts which either interfere with the parties' right to use the courts or deprive the courts of their inherent jurisdiction. In evidence of this policy, the legislature has enacted statutes voiding confessions of judgment and prohibiting contractual modification of statutes of limitation." (Citation omitted.)
Id. 295 Ala. at 173, 325 So.2d at 163.
The existence of a void provision for a confession of judgment, however, does not render an entire agreement void but simply invalidates the unauthorized provision as to confessing judgment. Sales-Davis Co. v. Henderson-Boyd Lumber Co.,193 Ala. 166, 172, 69 So. 527, 529 (1915):
 "The rule in this state is that, if the contract cannot be executed without the void provision, the whole will be declared void. If the right can be established without the void stipulation, the right of recovery is not affected by the illegal clause."
193 Ala. at 172, 69 So. at 529.
In the instant case, the confession of judgment provision, had it been valid, would have allowed Dr. Wright to go into court and recover under the contract without the necessity of process and a full trial. Since the clause in question is void as a matter of law, we must then construe the 1978 "Settlement Agreement" without the void confession of judgment provision. What remains is a valid and enforceable contract, which, by certain of its terms, sets forth defendants' promise to repay Dr. Wright's $5,000.00 and to return his $67,500.00 letter of credit.
The provision allowing for the confession of judgment did not set forth the claim itself, but only the method by which to enforce the claim. The method set forth was not an exclusive remedy in the event of default and did not preclude alternate remedies by suit. See Sales-Davis Co. v. Henderson-Boyd LumberCo., supra, 193 Ala. at 173, 69 So. at 530. Since the only method of enforcement is void, the underlying breach of contract claim is preserved, but it is no longer "confessed to." Instead, Dr. Wright will have to prove at trial that a breach of contract has occurred.
Robinson, however, argues that the rules set forth inSales-Davis, supra, are inapplicable in the instant case because, since the consent judgment marked "Exhibit F" is void as a confession of judgment and since the 1981 agreement released the breach of contract claim, there remains no other claim upon which relief could be granted. He argues that the clear language of the agreement released him from all claims except the void confession of judgment. We disagree. In AlabamaPower Co. v. Blount Construction Corp., 445 So.2d 250 (Ala. 1983), this Court, in attempting to discern the meaning of a release agreement, set forth the standard as follows:
 "When considering the language of a release, the trial court is called upon to discern the intent of the parties. This court recently noted, in Smith v. Smith, 418 So.2d 898 (Ala. 1982), that:
 "`In ascertaining the intention of the parties, the plain and clear meaning of the [contract's] terms must be given effect, and parties must be legally presumed to have intended what is plainly and clearly set out.' 418 So.2d at 901 (quoting Financial Inv. Corp. v. Tukabatchee Area Council, Inc., Boy Scouts of America, 353 So.2d 1389, 1391 (Ala. 1977). See also Federal Land Bank v. Terra Resources, Inc., 373 So.2d 314, 319-20 (Ala. 1979); Willis v. James, 287 Ala. 653, 659, 254 So.2d 717, 722 (1971). *Page 99 
 In determining whether the language of the release agreement entered into between [the parties] was ambiguous, we must also give the words of the agreement their `ordinary meaning.' Food Service Distributors, Inc. v. Barber, 429 So.2d 1025, 1028
(Ala. 1983)."
Id. at 252.
It is evident from the language of the release that the parties intended to preserve the claim for $72,500.00. However, it remains a question of fact, due to the apparent ambiguities in the release itself, whether that claim was properly preserved. The problem arises because, although, as previously discussed, the breach of contract claim would be preserved under the language "except the claim . . . as agreed and consented to in that certain consent judgment . . .," if read in light of the next phase, "as to the claims asserted in count four of Civil Action 78-31-E, United States District Court for the Middle District of Alabama, for the sum of $72,500.00," the ordinary language becomes ambiguous.
Whether the release agreement only preserves the federal claim or whether the breach of contract claim was properly excepted are questions of fact to be resolved by a jury. Accordingly, we find that summary judgment was improperly granted, and we therefore reverse and remand.
REVERSED AND REMANDED.
JONES, ALMON, EMBRY and ADAMS, JJ., concur.