******************************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RECLAIMANT CORP. *v.* WILLIAM J. DEUTSCH ET AL.
## (SC 20133)

McDonald, D'Auria, Mullins, Kahn, Ecker and Vertefeuille, Js.

*Syllabus*

The plaintiff corporation sought to recover from the defendants for unjust enrichment in connection with the alleged overpayment of funds to them by the plaintiff's predecessor in interest, V Co., a Delaware limited partnership in which the defendants had invested pursuant to a limited partnership agreement. In early 2008, the defendants, who are Connecticut residents, each redeemed approximately 90 percent of the funds from their capital accounts in V Co. and thereafter withdrew from the partnership. The plaintiff alleged that, when the defendants redeemed their investments, V Co. had miscalculated the net value of the partnership's assets, and, consequently, the net values of the defendants' interests had been overstated, resulting in overpayments to the defendants. After the plaintiff filed its action in 2013, the defendants raised various special defenses, including, inter alia, that the plaintiff's unjust enrichment claims were time barred by either Delaware's three year limitation period (§ 17-607 [c]) in the Delaware Revised Uniform Limited Partnership Act or Connecticut's statutory (§ 52-577) three year limitation period generally applicable to tort actions, or were barred by the doctrine of laches. The plaintiff and the defendants each moved for summary judgment on certain of the defendants' special defenses. The trial court denied the plaintiff's motion for summary judgment, granted the defendants' motion as to their special defense that the plaintiff's claims were barred by the three year limitation period set forth in § 17-607 (c) and rendered judgment for the defendants. The trial court reasoned that the choice of law provision in the limited partnership agreement, which provided that the rights and liabilities of the parties were to be governed by and construed in accordance with the laws of Delaware, reflected an intent that both the substantive and procedural law of Delaware would govern the relationship between the parties and concluded that the plaintiff's claims were time barred by Delaware's three year limitation period because the plaintiff commenced its action more than three years after V Co. dispensed the funds to the defendants. The trial court also explicitly rejected the plaintiff's contention that the choice of law provision governed only substantive law and not procedural issues such as the statute of limitations. On appeal, the plaintiff claimed, inter alia, that the trial court improperly granted the defendants' motion for summary judgment because the procedural law of Connecticut, rather than that of Delaware, governed its unjust enrichment claims, under Connecticut procedural law, an equitable action for unjust enrichment was not subject to any statutory limitation period or, in the alternative, is subject to the six year statutory (§ 52-576 [a]) limitation period applicable to contracts, and that its action, therefore, was timely filed. *Held*:

1. The trial court incorrectly determined that Delaware law, rather than Connecticut law, governed the issue of whether the plaintiff's unjust enrichment claims were time barred: in a choice of law scenario, the forum state generally will apply the substantive law of the state chosen by the parties to govern their rights and duties under a contractual agreement but will apply its own law to matters of judicial administration and procedure, and, in Connecticut, whether a statute of limitations properly is characterized as substantive or procedural depends on the nature of the underlying right that forms the basis of the cause of action; in the present case, the choice of law provision in the limited partnership agreement was clear that the parties had agreed that Delaware law controlled the substantive rights and liabilities of the parties, and, therefore, Delaware substantive law governed the plaintiff's unjust enrichment claims; because, however, the plaintiff's claims for unjust enrichment were claims for restitution that derived from equitable principles under Delaware's common law, the limitation period applicable to those claims properly was characterized as procedural, as that limitation period functioned only as a qualification on the remedy to enforce a

preexisting common-law right, and, accordingly, Connecticut law governed the timeliness issue; moreover, the fact that § 17-607 (c) properly is classified as a statute of repose, rather than a statute of limitations, had no bearing on whether that provision was deemed substantive or procedural for choice of law purposes, and the limited partnership agreement did not expressly incorporate that Delaware provision or otherwise indicate an intent that Delaware's procedural law would apply.

2. The defendants could not prevail on their claim, as an alternative ground for affirming the trial court's judgment, that the plaintiff's unjust enrichment claims were barred under Connecticut law by the three year limitation period generally applicable to tort actions, because the plaintiff's claims were equitable claims for relief and, thus, were not subject to any statute of limitations; furthermore, this court declined to address the issue of whether the defendants could prevail on their affirmative defense of laches, as the trial court made no factual findings with respect to that affirmative defense, and, accordingly, the case was remanded for the trial court's consideration of that defense, as well as any remaining grounds for summary judgment that the defendants raised in their summary judgment motion.

Argued November 7, 2018—officially released August 6, 2019

*Procedural History*

Action to recover damages for unjust enrichment, and for other relief, brought to the Superior Court in the judicial district of Stamford, where the defendants filed a counterclaim; thereafter, the court, *Genuario, J.*, granted the defendants' motion for summary judgment and rendered judgment for the defendants as to the plaintiff's complaint, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*David S. Golub*, with whom, on the brief, was *Jonathan M. Levine*, for the appellant (plaintiff).

*Howard Graff*, pro hac vice, with whom, on the brief, were *Stephen G. Walko* and *Andrea C. Sisca*, for the appellees (defendants).

*Opinion*

ECKER, J. The narrow issue presented by this appeal is whether the statute of limitations of the state of Connecticut or the state of Delaware governs the unjust enrichment claims brought by the plaintiff, Reclaimant Corp., against the defendants, William J. Deutsch and Laurence B. Simon, seeking recovery for alleged over-payments issued to the defendants by the plaintiff's putative predecessor in interest pursuant to a limited partnership agreement. The trial court rendered sum-mary judgment in favor of the defendants, concluding that the plaintiff's unjust enrichment claims were gov-erned by Delaware law and were time-barred under the three-year statute of limitations in the Delaware Revised Uniform Limited Partnership Act (DRULPA), Del. Code Ann. tit. 6, § 17-607 (c) (2005).[1] On appeal, the plaintiff contends that summary judgment was improper because Connecticut law governs the timeliness of its unjust enrichment claims and that those claims timely were filed under Connecticut law.

We conclude that Delaware law governs the substan-tive rights and liabilities of the parties arising out of the limited partnership agreement but that Connecticut law governs matters of judicial administration and pro-cedure. We further conclude that, because the plaintiff's unjust enrichment claims have a common-law origin, the limitation period properly is "characterized as pro-cedural because it functions only as a qualification on the remedy to enforce the preexisting right." *Baxter* v. *Sturm, Ruger & Co.*, 230 Conn. 335, 347, 644 A.2d 1297 (1994). Thus, Connecticut law, rather than Delaware law, controls the timeliness of the plaintiff's claims. We therefore reverse the judgment of the trial court and remand the case for further proceedings.

I

The record reveals the following relevant facts and procedural history. In 2007, the defendants entered into a limited partnership agreement with SV Special Situa-tions Fund LP (SV Fund), a Delaware limited partner-ship formed for the purpose of investing in and trading securities and other investments. In early 2008, the defendants redeemed their respective investments and withdrew from the partnership as of March 31, 2008. Deutsch received approximately 90 percent of the funds in his capital account, for a total distribution in the amount of $22,309,473.03, and Simon received approxi-mately 90 percent of the funds in his capital account, for a total distribution in the amount of $2,176,785.80.[2]

By letters dated September 4, 2012, Scott A. Stagg, the director of SV Fund, informed each of the defen-dants that the "net asset value of your interest in the . . . Fund was . . . overstated [at the time you redeemed your investment], resulting in . . . overpay-ment . . . ." Stagg alleged that Deutsch had received

a total overpayment in the amount of $7,047,974.03 and that Simon had received a total overpayment in the amount of $724,557.80, and he demanded that the defendants return the alleged overpayments within thirty days.

The defendants responded by requesting documentation and clarification of the alleged overpayments. The defendants also requested payment of the remaining funds in their capital accounts, which had been held back at the time of redemption. Specifically, Deutsch asked for the payment of $807,127.97 and Simon asked for the payment of $102,753.

SV Fund was liquidated in February, 2013, and its claims against the defendants were assigned to the plaintiff. On May 8, 2013, the plaintiff filed a two-count complaint against the defendants, both of whom reside in Connecticut. In the first count, the plaintiff alleged that Deutsch had been "unjustly enriched as a result of receiving and retaining" the alleged overpayment in the amount of $7,047,974.03. In the second count, the plaintiff alleged that Simon had been "unjustly enriched as a result of receiving and retaining" the alleged overpayment in the amount of $724,557.80.

The defendants moved to strike the complaint as time-barred under the three-year statute of limitations in § 17-607 (c) of DRULPA because "the distributions were made in 2008 and the complaint was not filed until 2013 . . . ." The plaintiff opposed the defendants' motion to strike, contending that, "if any statute of limitations applies to the plaintiff's equitable unjust enrichment claims . . . it is [Connecticut's] six-year statute [of limitations applicable to contracts] set forth in [General Statutes] § 52-576 (a), and the plaintiff's claims are, therefore, not time-barred." The trial court determined that it was "inappropriate to decide this potentially dispositive issue within the context of a motion to strike" and, therefore, denied the defendants' motion.

The defendants filed an answer denying that they had been unjustly enriched and raising the following affirmative defenses: (1) the plaintiff's claims are barred by § 17-607 (b) of DRULPA, "which specifies that a limited partner who unknowingly receives an alleged overpayment is not liable for returning the amount of that distribution"; (2) the plaintiff's claims are barred by the three-year statute of limitations in § 17-607 (c) of DRULPA; (3) the plaintiff's complaint fails to state a claim on which relief may be granted because SV Fund "could have prevented and/or addressed any potential alleged overpayments"; (4) the plaintiff's claims are barred by the three-year statute of limitations governing torts in General Statutes § 52-577; (5) the plaintiff "lacks standing because [it] has not established its right to bring a cause of action on behalf of SV Fund"; (6) the plaintiff "lacks standing because [it] has not established

that SV Fund or its assignees have a right to bring a cause of action on behalf of 3V Capital Partners, LP";[3] (7) the plaintiff's claims are barred by the doctrine of laches due to its "inexcusable delay" in filing suit; (8) the plaintiff's claims are "barred by the doctrine of waiver"; (9) the plaintiff's claims are "barred by the doctrine of estoppel"; (10) the plaintiff's claims "are barred by the equitable doctrine of unclean hands"; (11) the plaintiff's claims "are barred by the doctrine of satisfaction and accord"; and (12) the plaintiff "failed to mitigate its damages, if any exist." The defendants also filed a counterclaim against the plaintiff on the basis of SV Fund's alleged failure to distribute the funds remaining in their capital accounts.

The plaintiff moved for summary judgment on the defendants' second and fourth special defenses, contending that "Connecticut's statute of limitations law applies to the plaintiff's common-law unjust enrichment claims" and "Connecticut law provides that either no statute of limitations applies to an equitable action for unjust enrichment, or, at a minimum, that a six-year statute of limitations applies, and this action is timely under either measure." The defendants opposed the plaintiff's motion for summary judgment and moved for summary judgment on their first, second, third, fourth, and seventh special defenses. The essence of the defendants' argument was that the plaintiff's "contention that Connecticut law applies to [this] dispute is academic since neither Connecticut nor Delaware law . . . permit[s] parties to pursue unjust enrichment claims as a means to rewrite the express terms of a written agreement governing the payments at issue" and the plaintiff's unjust enrichment claims are time-barred under both Delaware and Connecticut law.

The trial court's resolution of the parties' competing motions for summary judgment was guided largely by the fact that the limited partnership agreement contains a choice of law provision, which states: "This [a]greement and all rights and liabilities of the parties hereto shall be governed by and construed in accordance with the laws of the [s]tate of Delaware, without regard to its conflicts of law principles." The trial court observed that § 187 (1) of the Restatement (Second) of Conflict of Laws "requires that the law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue was one which the parties could have resolved by an explicit provision in their agreement directed to that issue." The trial court determined that the contractual choice of law provision here "expressly elects Delaware law for all issues regarding the parties' rights and liabilities including those set forth in [§] 17-607 (c) of . . . DRULPA." In arriving at its decision, the trial court rejected the plaintiff's contention that the choice of law provision governed the substantive law of the contract but not procedural matters like the applicable statute of limitations,

reasoning that the "broad and clear" language of the contract "evidences an intent to include all issues (whether substantive or procedural) concerning rights, and all issues concerning liabilities, to be governed by Delaware law within the breadth of the choice of law election." Having determined that "the parties clearly and unambiguously elected to have Delaware law govern their relationship, even when it provides time limits on liabilities that are different [from] the time limits on liabilities that may be imposed by the state of Connecticut,"[4] the trial court granted the defendants' motion for summary judgment on their second special defense, denied the plaintiff's motion for summary judgment, and rendered judgment in favor of the defendants.

The plaintiff filed an appeal with the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the plaintiff claims that the trial court improperly rendered summary judgment in favor of the defendants because the choice of law provision in the limited partnership agreement "refers only to Delaware substantive law; it does not encompass Delaware procedural law," and the limitation period governing common-law claims properly is characterized as procedural rather than substantive. Alternatively, the plaintiff contends that, even if Delaware procedural law controls the timeliness of its claims, § 17-607 (c) of DRULPA is inapplicable because the defendants withdrew from the limited partnership in 2008 and, therefore, were not limited partners at the time the action was filed. Lastly, the plaintiff claims that its complaint was filed timely under Connecticut law because "unjust enrichment is either not subject to any statute of limitations at all (as an equitable claim) or is governed by the six-year [limitation] period [applicable to contracts] set forth in . . . § 52-576 (a)."

The defendants respond that the judgment of the trial court should be affirmed because that court properly concluded that the limited partnership agreement expressly incorporated Delaware law, including the three-year limitation period in § 17-607 (c) of DRULPA. They also argue that Connecticut law requires the application of § 17-607 (c) because General Statutes § 34-38f (1) provides that "the laws of the state under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners." Alternatively, the defendants contend that, even if we were to conclude that Connecticut law, rather than Delaware law, governs the timeliness of the plaintiff's claims, the trial court's judgment nonetheless should be affirmed on the ground that the plaintiff's unjust enrichment claims are time-barred under either the three-year statute of limitations in § 52-577 or the doctrine of laches. Lastly, the defendants argue that the judgment of the trial court may be affirmed on the alternative ground that "the equitable remedy of unjust

enrichment is unavailable where there is a written contract between the parties on the subject."

## II

The applicable standard of review is not in dispute. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 6–7, 882 A.2d 597 (2005). It is well settled that "[c]hoice of law questions are subject to de novo review." *Western Dermatology Consultants, P.C.* v. *VitalWorks, Inc.*, 322 Conn. 541, 558, 153 A.3d 574 (2016); see also *American States Ins. Co.* v. *Allstate Ins. Co.*, 282 Conn. 454, 461, 922 A.2d 1043 (2007) (noting that "choice of law issues present questions of law over which our review is plenary").

Nor do the parties disagree about the fundamental starting point of the conflict of laws analysis, which requires initial resort to Connecticut conflict of laws rules. "In determining the governing law, a forum applies its own [conflict of laws] rules . . . ." *Gibson* v. *Fullin*, 172 Conn. 407, 411, 374 A.2d 1061 (1977). The applicable Connecticut conflict of laws rule depends upon the nature of the plaintiff's claim. See *Macomber* v. *Travelers Property & Casualty Corp.*, 277 Conn. 617, 640, 894 A.2d 240 (2006) (applying different choice of law rules to tort and contract claims). This court previously has referred to unjust enrichment as both a tort[5] and a quasi-contractual claim;[6] however, we also have recognized, more accurately, that it is neither a species of tort nor contract but, rather, an equitable "means of recovery in restitution." *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 587 n.9, 57 A.3d 730 (2012) (clarifying that unjust enrichment is a "noncontractual means of recovery in restitution"); see also *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006) ("[u]njust enrichment is, consistent with the principles of equity, a broad and flexible remedy," and there is "no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, con-

scionable or unconscionable" [internal quotation marks omitted]); *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 399, 216 A.2d 814 (1966) (noting that unjust enrichment "is essentially equitable," and, in order to recover in restitution under that doctrine, there is no requirement that "the party unjustly enriched should have been guilty of any tortious or fraudulent act").

Section 221 of the Restatement (Second), titled "Restitution," "is concerned with what law governs a person's right to recover from another, on grounds of fairness and good conscience, the amount by which the other has been unjustly enriched at his expense." 1 Restatement (Second), Conflict of Laws c. 8, topic 6, introductory note, p. 726 (1971). Section 221 provides in relevant part that "[i]n actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."[7] Id., § 221 (1), p. 727. Under subsection (2) of § 221, one of the "[c]ontacts to be taken into account in applying the principles of § 6" is "the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship." Id., § 221 (2) (a), p. 727. According to the commentary, "[t]he place where a relationship between the parties was centered, provided that this relationship was substantially related to the receipt of enrichment, is the contact that, as to most issues, is given the greatest weight in determining the state of the applicable law." Id., comment (d), pp. 729–30. For example, "[w]hen the enrichment was received in the course of the performance of a contract between the parties, the law selected by application of the rules of §§ 187–188 [of the Restatement (Second)] will presumably govern one party's rights in restitution against the other. The applicable law will be that chosen by the parties if they have made an effective choice under the circumstances stated in § 187." Id., comment (d), p. 730.

In the present case, the alleged unjust enrichment occurred in the course of the performance of the limited partnership agreement, and, therefore, we must turn to § 187 of the Restatement (Second) to resolve the conflict of law inquiry. Section 187 of the Restatement (Second) provides in relevant part that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Id., § 187 (1), p. 561; see *Elgar* v. *Elgar*, 238 Conn. 839, 850, 679 A.2d 937 (1996) (noting that, under § 187, "parties to a contract generally are allowed to select the law that will govern their contract"). This "is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speak-

ing, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intention of the parties." 1 Restatement (Second), supra, § 187, comment (c), p. 563.

The limited partnership agreement here contains a choice of law provision that provides: "This [a]greement and all rights and liabilities of the parties hereto shall be governed by and construed in accordance with the laws of the [s]tate of Delaware, without regard to its conflicts of law principles." Pursuant to this choice of law provision, as well as the other parts of the contract evidencing the signatories' intent "to form a limited partnership . . . in accordance with the provisions of [DRULPA]," we conclude that Delaware substantive law controls the plaintiff's unjust enrichment claims.[8]

This does not end our analysis, however, because it is well established that "in a choice of law situation the forum state will apply its own procedure . . . ." *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 650, 579 A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990); see, e.g., *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 447, 165 A.3d 1137 (2017) ("[a]lthough the choice of law provision in the 1983 trust dictates that matters of substance will be analyzed according to Massachusetts law, procedural issues such as the standard of review [and standing] are governed by Connecticut law"); *Montoya* v. *Montoya*, 280 Conn. 605, 612 n.7, 909 A.2d 947 (2006) ("[a]lthough the agreement's choice of law provision dictates that the substance of the contract will be analyzed according to New York law, procedural issues such as the applicable standard of review are governed by Connecticut law"); *People's United Bank* v. *Kudej*, 134 Conn. App. 432, 438, 39 A.3d 1139 (2012) ("because the 1998 note and the guarantee contain choice of law clauses stating that they are to be governed and construed in accordance with Massachusetts law . . . we are guided by Massachusetts substantive law in deciding the defendant's claims, but we must apply the procedural laws of Connecticut"). This approach is consistent with § 122 of the Restatement (Second), which provides that "[a] court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case." 1 Restatement (Second), supra, § 122, p. 350. As the commentary to that section explains, "[t]he forum has compelling reasons for applying its own rules" to procedural issues, even if the substantive law of another jurisdiction applies, because, "in matters of judicial administration, it would often be disruptive or difficult

for the forum to apply the local rules of another state. The difficulties involved in doing so would not be repaid by a furtherance of the values that the application of another state's local law is designed to promote." Id., comment (a), p. 350. Additionally, "[p]arties do not usually give thought to matters of judicial administration before they enter into legal transactions," and, therefore, "the parties have no expectations as to such eventualities, and there is no danger of unfairly disappointing their hopes by applying the forum's rules in such matters." Id., p. 351. Even if the application of the forum's procedural rule would alter the outcome of a case, "the forum will usually apply its own rule if the issue primarily concerns judicial administration. The statute of limitations is a striking example of such an issue . . . ." Id.

In *Baxter* v. *Sturm, Ruger & Co.*, supra, 230 Conn. 339, we addressed whether a "statute of limitation[s] is procedural or substantive for choice of law purposes." We noted that it is "undisputed that . . . remedies and modes of procedure depend upon the lex fori" and that statutes of limitations typically are procedural because they "relate to the remedy as distinguished from the right." (Internal quotation marks omitted.) Id.; see also *Thomas Iron Co.* v. *Ensign-Bickford Co.*, 131 Conn. 665, 668, 42 A.2d 145 (1945) ("[i]t is undisputed that, as a principle of universal application, remedies and modes of procedure depend upon the lex fori"). Nonetheless, a statute of limitations may be deemed substantive, rather than procedural, "if the limitation is so interwoven with . . . the cause of action as to become one of the congeries of elements necessary to establish the right . . . ." (Internal quotation marks omitted.) *Baxter* v. *Sturm, Ruger & Co.*, supra, 340; see also *Thomas Iron Co.* v. *Ensign-Bickford Co.*, supra, 668–69 (observing that, if "the remedial law of the foreign jurisdiction is inseparable from the cause of action," then "the lex loci and not the lex fori governs"). We determined that neither statutes of limitations nor statutes of repose are "substantive [or] procedural per se for choice of law purposes," but, rather, the characterization of the applicable limitation period "depends on the nature of the underlying right that forms the basis of the lawsuit. If the right existed at common law, then the [limitation period] is properly characterized as procedural because it functions only as a qualification on the remedy to enforce the preexisting right. If, however, the right is newly created by the statute, then the [limitation period] is properly characterized as substantive because the period of repose is so integral a part of the cause of action as to warrant saying that it qualifie[s] the right." (Internal quotation marks omitted.) *Baxter* v. *Sturm, Ruger & Co.*, supra, 346–47; see also 1 Restatement (Second), supra, § 143, p. 400 ("[a]n action will not be entertained in another state if it is barred in the state of the otherwise applicable law by

a statute of limitations which bars the right and not merely the remedy").[9] Applying these principles to the facts at issue in *Baxter,* we held that the timeliness of the plaintiff's product liability claims was governed by Connecticut's statute of limitations, rather than Oregon's statute of repose, "in light of the [common-law] origin of the law of products liability . . . ." *Baxter* v. *Sturm, Ruger & Co.*, supra, 347.

Pursuant to *Baxter,* the procedural or substantive nature of the limitation period depends on whether the plaintiff's right to relief existed under Delaware common law. See id., 341 (examining Oregon law to determine whether plaintiff's claims existed at common law).[10] Under Delaware law, unjust enrichment is a claim for restitution. See *Fleer Corp.* v. *Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988). The right to relief is not created by statute but, rather, derives from equitable principles under the common law. See, e.g., *Schock* v. *Nash*, 732 A.2d 217, 232 (Del. 1999) ("[u]njust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience" [internal quotation marks omitted]). Given the common-law origin of the plaintiff's unjust enrichment claims, we conclude that the limitation period "is properly characterized as procedural because it functions only as a qualification on the remedy to enforce the preexisting right."[11] *Baxter* v. *Strum, Ruger & Co.*, supra, 230 Conn. 347. Accordingly, Connecticut law, rather than Delaware law, governs the timeliness of the plaintiff's claims.

The defendants contend that § 17-607 (c) of DRULPA is substantive, rather than procedural, because it extinguishes the liability of a limited partner after the expiration of three years. To support this contention, the defendants rely on *Century City Doctors Hospital, LLC* v. *Friedman*, 466 B.R. 1, 12–13 (Bankr. C.D. Cal. 2012), and *Freeman* v. *Williamson*, 890 N.E.2d 1127, 1133–34 (Ill. App. 2008), both of which held that § 17-607 (c) is substantive because it is a statute of repose, not a statute of limitations. We agree with the courts in *Century City Doctors Hospital, LLC*, and *Freeman* that § 17-607 (c) properly is characterized as a statute of repose because it "clearly terminates the possibility of the limited partner's liability after a defined period of time, three years after receiving a distribution, regardless of whether a potential plaintiff knows of his or her cause of action." *Century City Doctors Hospital, LLC* v. *Friedman*, supra, 13, quoting *Freeman* v. *Williamson*, supra, 1134; see *Baxter* v. *Sturm, Ruger & Co.*, supra, 230 Conn. 341 (recognizing that "statutes of repose differ in some respects from statutes of limitation" because they terminate "any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury" [internal quotation marks omit-

ted]). Labeling the statute as such does not resolve the issue at hand, however, because this court in *Baxter* explicitly rejected the notion that "statutes of repose . . . are always substantive"; *Baxter* v. *Sturm, Ruger & Co.*, supra, 341; instead, concluding that statutes of repose should be treated the same as statutes of limitations for choice of law purposes because they both "serve the same public policy of avoiding the litigation of stale claims." Id., 344. Under Connecticut's choice of law rules, the dispositive inquiry is not whether the statute at issue properly is characterized as a statute of repose or a statute of limitations, but whether the "nature of the underlying right that forms the basis of the lawsuit" existed at common law.[12] Id., 347. Because Delaware law recognizes a common-law claim for unjust enrichment, § 17-607 (c) of DRULPA is a procedural limitation on that preexisting right to relief.

The defendants next contend that the choice of law provision in the limited partnership agreement is worded broadly to include all of Delaware's procedural law as well as its substantive law. We disagree. "Choice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law such as statutes of limitation[s]." *Federal Deposit Ins. Corp.* v. *Peterson*, 770 F.2d 141, 142 (10th Cir. 1985). Thus, "[a]bsent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions . . . ." *Cole* v. *Mileti*, 133 F.3d 433, 437 (6th Cir.), cert. denied, 525 U.S. 810, 119 S. Ct. 42, 142 L. Ed. 2d 32 (1998); see also *Gluck* v. *Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992) ("[c]hoice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express"); *Des Brisay* v. *Goldfield Corp.*, 637 F.2d 680, 682 (9th Cir. 1981) (Choice of law "clauses generally do not contemplate application to statutes of limitation. [Limitation] periods are usually considered to be related to judicial administration and thus governed by the rules of local law, even if the substantive law of another jurisdiction applies."); *Portfolio Recovery Associates, LLC* v. *King*, 14 N.Y.3d 410, 416, 927 N.E.2d 1059, 901 N.Y.S.2d 575 (2010) ("Choice of law provisions typically apply to only substantive issues . . . and statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right . . . . There being no express intention in the agreement that Delaware's statute of limitations was to apply to this dispute, the choice of law provision cannot be read to encompass that [limitation] period." [Citations omitted; internal quotation marks omitted.]).

The choice of law provision in the limited partnership agreement does not mention, much less expressly incorporate, the three-year limitation period in § 17-607 (c) of DRULPA.[13] A "standard choice of law provision," such as the one at issue in the present case, which does

not mention the procedural law of another state, "will not be interpreted as covering a statute of limitations." *Federal Deposit Ins. Corp.* v. *Peterson*, supra, 770 F.2d 142–43; see also *Generali-U.S. Branch* v. *Lachel & Associates, Inc.*, Docket No. 3:16-cv-595-DJH, 2017 WL 6999998, *3 (W.D. Ky. August 7, 2017) (holding that "the phrase 'governed by' is not an express statement indicating that Indiana law should apply to the statute of limitations"); *American Energy Technologies, Inc.* v. *Colley & McCoy Co.*, Docket No. CIV A. 98-398 MMS, 1999 WL 301648, *2 (D. Del. April 15, 1999) (holding that choice of law provision, providing in relevant part that "[t]he agreement shall be interpreted according to the laws of the [c]ommonwealth of Virginia," did "not expressly provide for the laws of the [c]ommonwealth of Virginia to apply to the statute of limitations," and, therefore, "Virginia's five-year statute of limitations for contract cases [was] inapplicable").

Finally, the defendants contend that § 17-607 (c) of DRULPA must apply to the plaintiff's unjust enrichment claims pursuant to the Connecticut Uniform Limited Partnership Act (CULPA), General Statutes § 34-9 et seq., which provides in relevant part that "[s]ubject to the Constitution of this state . . . the laws of the state under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners . . . ." General Statutes § 34-38f (1). Again, we disagree. Consistent with CULPA and the choice of law provision in the limited partnership agreement, Delaware law governs the substantive liability of the defendants with respect to the plaintiff's unjust enrichment claims. As we have explained, however, the time in which to file a Delaware unjust enrichment action is a matter of judicial administration and procedure that is controlled by Connecticut law. Therefore, Connecticut law governs the timeliness of the plaintiff's claims.

### III

Having concluded that Connecticut law governs the timeliness of the plaintiff's unjust enrichment claims, we next address the defendants' contention that the judgment of the trial court may be affirmed on the alternative ground[14] that the plaintiff's claims are barred by the three-year statute of limitations in § 52-577 generally applicable to tort actions.[15] The plaintiff responds that § 52-577 is inapplicable to the present case because unjust enrichment is not a tort but an equitable claim for relief. The plaintiff contends that its unjust enrichment claims are not subject to any limitation period at all or, in the alternative, are subject to the six-year statute of limitations applicable to contract actions. See General Statutes § 52-576 (a).[16]

As a preliminary matter, we note that the trial court did not reach the issue of which statute of limitations, if any, governs the plaintiff's unjust enrichment claims

under Connecticut law. When a trial court has not ruled on all of the grounds raised in a motion for summary judgment, we have the discretion either to "remand for further trial court proceedings" or "to consider whether, as a matter of law, the trial court's judgment can be sustained on . . . [alternative] grounds." *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 703, 694 A.2d 788 (1997); see also *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 219, 928 A.2d 586 (2007) ("[a]lthough the trial court did not rule on those [alternative] grounds for summary judgment, it is within our discretion to do so on appeal"), aff'd, 289 Conn. 57, 956 A.2d 579 (2008). Because the issue presents a pure question of law[17] that has been briefed extensively by the parties on appeal, the interest of judicial economy induces us to consider whether the plaintiff's unjust enrichment claims are barred by the three-year limitation period in § 52-577.

As explained in part II of this opinion, unjust enrichment is not a legal claim sounding in either tort or contract—it is an equitable claim for relief. As an equitable claim, its timeliness is not subject to a statute of limitations but, rather, to the equitable doctrine of laches. See *Dunham* v. *Dunham*, 204 Conn. 303, 326–27, 528 A.2d 1123 (1987) (holding that plaintiff's equitable claim for relief was not barred by three-year statute of limitations in § 52-577), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996); see also *Government Employees Ins. Co.* v. *Barros*, 184 Conn. App. 395, 399, 401, 195 A.3d 431 (2018) (recognizing that "[s]tatutes of limitations do not apply in a strict fashion to causes of action arising in equity," and when "the plaintiff's claim sounds only in equity, not in law or in both law and equity . . . the plaintiff's claim is not subject to any statute of limitations, let alone the same statutes of limitations applicable to the underlying claims" [footnote omitted]). In an action for equitable relief, a court is not "bound to apply the statute of limitations that governs the underlying cause of action. In fact, in an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute." *Dunham* v. *Dunham*, supra, 326. "Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations." Id., 326–27; see *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 411, 957 A.2d 836 (2008) (concluding that plaintiffs' equitable claims were time-barred because its legal claims were time-barred under statute of limitations). As equitable claims for relief, the plaintiff's unjust enrichment claims are not barred by the three-year limitation period in § 52-577.

The defendants contend[18] that, even under the doctrine of laches, the three-year limitation period in § 52-577 should apply to this action by analogy because the plaintiff "has no excuse whatsoever for waiting until 2013 to seek recovery of payments made in 2008," and the defendants have suffered prejudice as a consequence of the plaintiff's delay because "SV Fund recouped the alleged loss, SV Fund no longer exists, and all of the other partners have received their distributions." To prevail on the affirmative defense of laches, the defendants must establish, first, that there was an inexcusable delay and, second, that the delay "prejudiced the defendant[s]. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant[s] . . . . A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." (Citations omitted; internal quotation marks omitted.) *Papcun* v. *Papcun*, 181 Conn. 618, 620–21, 436 A.2d 282 (1980). The trial court made no factual findings regarding the defendants' special defense of laches, and, in the absence of subordinate facts, we decline to address the issue. We therefore remand this case to the trial court for consideration of the defendants' seventh special defense of laches, as well as the remaining grounds for summary judgment raised in the defendants' August 12, 2016 motion for summary judgment.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

[1] Section 17-607 of DRULPA provides that, "[u]nless otherwise agreed, a limited partner who receives a distribution from a limited partnership shall have no liability under this chapter or other applicable law for the amount of the distribution after the expiration of 3 years from the date of the distribution."

[2] Deutsch received the following distributions: (1) $15,000,000 in January, 2008; (2) $5,305,029.10 on May 8, 2008; (3) $2,000,000 on May 13, 2008; and (4) $4,443.93 on May 14, 2008. Simon received the following distributions: (1) $1,250,000 in January, 2008; and (2) $926,785.80 on May 2, 2008.

[3] 3V Capital Partners, LP, was a predecessor partnership to SV Fund, of which the defendants were limited partners.

[4] Additionally, the trial court rejected the plaintiff's argument that "[§] 17-607 (c) [of DRULPA] is not applicable because, upon their withdrawal, the defendant[s] ceased to be limited partners under the terms of the [limited partnership agreement]." The trial court determined that "a thorough reading of [§] 17-607 as a whole makes it clear that the words 'limited partner' refer to the person or entity who receives the distribution by virtue of the partner's status as a limited partner and applies even to withdrawing limited partners." The trial court did not reach the issue of "whether . . . the Connecticut statute of limitations would bar the plaintiff's claim[s]."

[5] See, e.g., *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 595, 898 A.2d 803 (2006); *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 277 Conn. 640; *Fink* v. *Golenbock*, 238 Conn. 183, 193, 680 A.2d 1243 (1996).

[6] See, e.g., *Habetz* v. *Condon*, 224 Conn. 231, 236 n.9, 618 A.2d 501 (1992); *Sidney* v. *DeVries*, 215 Conn. 350, 351–52 n.1, 575 A.2d 228 (1990); *Liljedah Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 346 n.1, 576 A.2d 149 (1990); see generally *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 511, 735 A.2d 813 (1999) ("[a]lthough, linguistically, such a claim is sometimes denominated an implied-in-law claim, or a quasi contract claim, it is more

descriptive to call it what it is, a claim in restitution whose basis is the alleged unjust enrichment of one person at the expense of another").

[7] We recognize that, in *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 277 Conn. 640, we held that unjust enrichment was a tort for choice of law purposes, and, therefore, "we apply the law of the state in which the plaintiff was injured, unless to do so would produce an arbitrary or irrational result." As this court recently clarified, however, "we have completely abandoned the lex loci test in tort actions" and adopted "the most significant relationship test outlined in §§ 6 (2) and 145 of the Restatement (Second) of Conflict of Laws [as] the proper test to apply in tort actions to determine which state's law applies." *Western Dermatology Consultants, P.C.* v. *VitalWorks, Inc.*, supra, 322 Conn. 551 n.9. Thus, regardless of whether a claim for unjust enrichment is characterized as a tort or an equitable claim for restitution, the same conflict of law principles apply, namely, the most significant relationship test set forth in the Restatement (Second).

[8] There is no contention that either of the exceptions listed in § 187 (2) of the Restatement (Second) is applicable to the present case. See 1 Restatement (Second), supra, § 187 (2), p. 561 (providing that law of state chosen by parties will be applied unless either "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties"); see also *Elgar* v. *Elgar*, supra, 238 Conn. 850 (holding that "parties to a contract generally are allowed to select the law that will govern their contract, unless either" exception in § 187 [2] of Restatement [Second] is applicable).

[9] We recognize that §§ 142 and 143 of the Restatement (Second) were repealed and replaced with an amended § 142 in the 1988 revision of the Restatement (Second), which abandoned the procedural/substantive distinction and embraced "the emerging trend" that "a claim will not be maintained if it is barred by the statute of limitations of the state which, with respect to the issue of limitations, is the state of most significant relationship to the occurrence and the parties under the principles stated in § 6." 1 Restatement (Second), Conflict of Laws § 142, comment (e), p. 125 (Supp. 1989). The parties in the present case have not asked us to overrule our prior precedent employing the traditional approach and adopt the 1988 revision to § 142 of the Restatement (Second), and, therefore, we have no reason to address the issue here. See *Spencer* v. *Hartford Financial Services Group, Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009) (noting that, although "Connecticut courts are trending [toward] following the Restatement's 'most significant relationship' test in place of traditional rules," this court's 1994 decision in *Baxter*, which postdated 1988 revision to § 142 of Restatement [Second], reflects that Connecticut courts continue to "follow the traditional rule" with respect to statutes of limitations); see also *Doe No. 1* v. *Knights of Columbus*, 930 F. Supp. 2d 337, 356 n.25 (D. Conn. 2013); *Bilodeau* v. *Vlack*, Docket No. 07-CV-1178 (JCH), 2009 WL 1505571, *4 (D. Conn. 2009).

[10] In *Baxter*, the term "common law" is used broadly to include all rights preexisting "new right[s] created by statute." *Baxter* v. *Sturm, Ruger & Co.*, supra, 230 Conn. 340. Thus, although the term may be used more narrowly in other contexts, in the present context, the "common law" includes "judicial precedent," "case law," and "natural law," as opposed to statutory law. (Internal quotation marks omitted.) *Moore* v. *Ganim*, 233 Conn. 557, 599, 660 A.2d 742 (1995); see also *Western Union Telegraph Co.* v. *Call Publishing Co.*, 181 U.S. 92, 102, 21 S. Ct. 561, 45 L. Ed. 765 (1901) ("[a]s distinguished from law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgments and decrees of the courts recognizing, affirming and enforcing such usages and customs" [internal quotation marks omitted]); *State* v. *Courchesne*, 296 Conn. 622, 674 n.36, 998 A.2d 1 (2010) ("[t]he common law is generally described as those principles, usage, and rules of action applicable to the government and security of persons and property which do not rest for their authority [on] any express and positive declaration of the will of the legislature" [internal quotation marks omitted]). We recognize that there is a distinction between "legal" and "equitable" claims, which derives from the historical distinction in England between "courts of law and courts

of equity." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 145, 84 A.3d 840 (2014); see id. (noting that, "[i]n the United States, most jurisdictions, including Connecticut and the federal courts, have merged law and equity courts"). This distinction, however, is irrelevant to the procedural/substantive analysis of a limitation period under *Baxter* and our use of the term "common law" here.

[11] The defendants, quoting *Baxter* v. *Sturm, Ruger & Co.*, supra, 230 Conn. 340, contend that DRULPA "created rights based on unique statutory relationships that did not exist at common law," and, therefore, the three-year statute of limitations in § 17-607 (c) is "one of the 'congeries of elements necessary to establish the right.' " Although DRULPA created a statutory framework that did not exist at common law, the plaintiff does not seek to recover under DRULPA or any of the statutory rights created therein; it seeks recovery solely under the common-law doctrine of unjust enrichment. As the master of the complaint, the plaintiff is free to decide what theory of recovery to pursue, and, under *Baxter*, the theory of recovery chosen by the plaintiff is dispositive of whether a statute of limitations is deemed procedural or substantive for choice of law purposes. See *Baxter* v. *Sturm, Ruger & Co.*, supra, 347.

[12] The defendants point out that "numerous Connecticut cases" have held "that a statute of limitation[s] is substantive." Nothing in the cases cited by the defendants is inconsistent with our holding in *Baxter* or the principles elucidated in this opinion, because, in all of those cases, the limitation period was part of a statutory scheme that did not exist at common law. See *Lostritto v. Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 26, 848 A.2d 418 (2004) (holding that 120-day limitation in General Statutes § 52-102b is substantive because it is part of statutory scheme that "confers rights that did not exist at common law"); *Ecker* v. *West Hartford*, 205 Conn. 219, 233, 530 A.2d 1056 (1987) (holding that three-year limitation in General Statutes § 52-555 is substantive because wrongful death statute "creates liability where none formerly existed" at common law); *Diamond National Corp.* v. *Dwelle*, 164 Conn. 540, 543, 325 A.2d 259 (1973) (holding that time limitation in General Statutes § 49-39 is substantive because "[a] mechanic's lien is a creature of statute and gives a right of action which did not exist at common law"); *Simmons* v. *Holcomb*, 98 Conn. 770, 774–75, 120 A. 510 (1923) (holding that statute of limitations for worker's compensation claim is substantive because "right of action . . . did not exist at common law," and, therefore, "it is a limitation of the liability itself, as created, and not of the remedy alone" [internal quotation marks omitted]); *Federal National Mortgage Assn.* v. *Jessup*, Docket No. CV-98-0169417-S, 1999 WL 624453, *11 (Conn. Super. August 3, 1999) (holding that statute of limitations for claim under Connecticut Unfair Trade Practices Act [CUTPA] is substantive because "CUTPA is a statutory creation").

[13] The limited partnership agreement provides that the limited partnership is "*create*[*d*] *and form*[*ed*]" in accordance with DRULPA but is "*governed by and construed in accordance with* the laws of the [s]tate of Delaware . . . ." (Emphasis added.) Thus, although the parties may have incorporated DRULPA with respect to the creation and formation of the partnership, the agreement itself and "all rights and liabilities of the parties" arising out of the agreement are governed by Delaware law generally. In any event, as explained in the text of this opinion, § 187 of the Restatement (Second) "is a rule providing for incorporation by reference and is not a rule of choice of law." 1 Restatement (Second), supra, § 187, comment (c), p. 563. Accordingly, even where the law of another state expressly has been incorporated into a contract by reference, the procedural law of the forum applies in the absence of an express statement to the contrary. See id., § 122 and comments (a) through (c), pp. 350–53.

[14] We note that the defendants did not file a preliminary statement of the issues "present[ing] for review alternative grounds upon which the judgment may be affirmed," as required Practice Book § 63-4 (a) (1). Nonetheless, we may consider the defendants' alternative grounds for affirmance as properly raised if "neither party would be prejudiced by our doing so . . . ." (Internal quotation marks omitted.) *Gerardi* v. *Bridgeport*, 294 Conn. 461, 466, 985 A.2d 328 (2010). Because the applicability of § 52-577 was discussed extensively in its principal appellate brief, we conclude that the plaintiff would not be prejudiced by our consideration of the defendants' alternative grounds for affirmance. See, e.g., *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 784 n.4, 900 A.2d 18 (2006).

[15] General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or

omission complained of."

[16] General Statutes § 52-576 (a) provides in relevant part that "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

[17] See, e.g., *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 407–08, 957 A.2d 836 (2008) ("[t]he question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo" [internal quotation marks omitted]).

[18] The defendants also contend that the judgment of the trial court may be affirmed on the alternative ground that "[i]t is well settled in Connecticut that the equitable remedy of unjust enrichment is unavailable where there is a written contract between the parties on the subject." We decline to address the defendants' alternative ground for affirmance in light of our conclusion in part II of this opinion that Delaware law, rather than Connecticut law, governs the substance of the plaintiff's unjust enrichment claims.